UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| DONALD E. HALLA and DONALD E. HALLA ROTH IRA (Tradestation Account No. 172-78914), | Case No. 19-CV-2097 (NEB/KMM) |
| Plaintiffs, | ORDER ON MOTION TO DISMISS |
| v. | |
| LIKEZEBRA, LLC, KEITH PHILLIPS, and CRAIG RICKARD, | |
| Defendants. | |

---

Plaintiffs Donald E. Halla and Donald E. Halla ROTH IRA (Tradestation Account No. 172-78914) have sued defendants LikeZebra, LLC ("LikeZebra"), Keith Phillips, and Craig Rickard under various common law causes of action. (ECF No. 39 ("Amended Complaint" or "Am. Compl.").) The defendants move to dismiss the Amended Complaint, arguing that this Court lacks personal jurisdiction over them and that the claims asserted against them are untimely. (ECF No. 22.) For the reasons below, the Court grants in part and denies in part the defendants' motion to dismiss.

BACKGROUND

The Court draws the following background from the Amended Complaint, accepting its factual allegations as true and drawing all reasonable inferences in the plaintiffs' favor. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir.

2014). In so doing, the Court disregards any conclusory allegations or legal conclusions. *See Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

### I. Halla Invests in LikeZebra

Around 2010, LikeZebra and some of its members, including Phillips and Rickard, sought financing in support of a proposed Business Plan that they presented to prospective investors. (*See* Am. Compl. ¶¶ 43, 50.) Among other things, that Business Plan envisioned using the funds raised from interested investors to "expand into the first and only live-streaming social media revenue generating platform for the music industry," partnering with various companies engaged in on-line streaming. (*See id.* ¶ 43.)

Halla received the marketing materials LikeZebra published in connection with its attempts to raise funding for its proposed Business Plan. (*Id.* ¶ 53.) The defendants sought a $300,000 investment from Halla. (*Id.* ¶ 55.) Rather than invest, Halla agreed to issue two loans to LikeZebra. (*Id.* ¶¶ 58–59; *see also* Am. Compl., Exs. B, C (together, the "Loan Agreements").) Halla entered one Loan Agreement with LikeZebra for $61,000. (Am. Compl., Ex. B.) Halla's ROTH IRA entered another Loan Agreement with LikeZera for $239,000. (Am. Compl., Ex. C.) The lender address on each Loan Agreement is the same address in Edina, Minnesota. (*See* Loan Agreements at 1.) The Loan Agreements provide that:

The Borrower will repay the Loan to the Lender as follows:

2

(a) Interest on this Note shall accrue at the rate of Fifteen Percent (15%) per annum for months one (1) through six (6) of the first year, and at a rate of Twenty Percent (20%) per annum thereafter until Maturity.

(b) A payment representing outstanding interest only shall be payable quarterly within thirty (30) days of the end of each fiscal quarter in cash and/or wire transfer, due each quarter until Maturity.

(c) Upon Maturity, any outstanding interest and the entire outstanding principal amount of the original loan amount . . . shall be due and payable in one balloon payment on Friday August 30th, 2013; the end of the second year of this Agreement.

(Loan Agreements § 2.3.) The Loans also define "Maturity" as "Friday August 30th, 2013." (Loan Agreements § 1.7.)

The funds that Halla lent to LikeZebra were transferred to other ailing businesses that were also managed by Phillips and Rickard, and to Phillips's and Rickard's personal accounts, rather than being used to realize LikeZebra's proposed Business Plan. (*Id.* ¶¶ 159–161.) LikeZebra stopped making payments to Halla after June 2012. (*Id.* ¶¶ 90–102.)

**II.    The Plaintiffs sue LikeZebra and its Members**

On August 2, 2019, the plaintiffs sued LikeZebra, Phillips, and Rickard, asserting claims for breach of contract, fraudulent inducement, and corporate veil-piercing. (ECF No. 1.) The defendants filed their motion to dismiss on April 3, 2020. (ECF No. 22.) After hearing oral argument on the defendants' motion, the Court issued an order concluding that plaintiffs had failed to sufficiently allege the diversity of the parties and granting plaintiffs leave to amend their complaint for the limited purpose of clarifying LikeZebra's

citizenship. (ECF No. 38 (the "June 3 Order").) The plaintiffs did so, the defendants rested on the previous motion papers, and the motion came under advisement.[1]

## ANALYSIS

### I.     Motion to Dismiss/Amended Complaint

As a threshold matter, the Court notes that filing an amended complaint ordinarily moots a defendant's motion to dismiss. *Onyiah v. St. Cloud State Univ.*, 655 F. Supp. 2d 948, 958 (D. Minn. 2009). But "a defendant need not file a new Rule 12 motion merely because the plaintiff amended his pleading while the defendant's motion was pending." *DeVary v. Countrywide Home Loans, Inc.*, 701 F. Supp. 2d 1096, 1100 (D. Minn. 2010). "If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading." *Bishop v. Abbott Labs.*, No. 19-CV-420 (NEB/ECW), 2019 WL 6975449, at *3 (D. Minn. Dec. 20, 2019) (quoting 6 Charles Alan Wright, et al., Federal Practice and Procedure § 1476 (3d ed. 2019)). The defendants have made clear that the arguments they made for dismissal of the original complaint apply with equal force to the Amended Complaint. (*See* ECF No. 40.) The Court will thus treat the defendants' motion to dismiss the original complaint as a motion to dismiss the Amended Complaint.

### II.    Personal Jurisdiction

---

[1] Based on the new allegations, the Court is satisfied diversity jurisdiction exists, and asserts jurisdiction over the case.

The defendants argue that this Court lacks personal jurisdiction over them. Rule 12(b)(2) of the Federal Rules of Civil Procedure permits a party to move to dismiss a claim asserted against it for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). The parties have submitted declarations to bolster their positions with respect to personal jurisdiction. (*See, e.g.*, ECF No. 26 ("Phillips Decl."), ECF No. 27 ("Rickards Decl.").) The motion is therefore "in substance one for summary judgment" on the narrow issue of the Court's authority to exercise jurisdiction over the defendants. *Creative Calling Solutions, Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015).

"The plaintiff bears the burden of proof on the issue of personal jurisdiction." *Id.* The claims should not be dismissed if the evidence, viewed in the light most favorable to the plaintiffs, is sufficient to support the exercise of jurisdiction over the defendants. *Id.* "A federal court in a diversity action may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004) (quoting *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1280 (8th Cir. 1991)). And "Minnesota's long-arm statute extends as far as the Constitution allows." *Federated Mut. Ins. Co. v. FedNat Holding Co.*, 928 F.3d 718, 720 (8th Cir. 2019). Thus, the two prongs of the analysis—whether jurisdiction is permitted by Minnesota's long-arm statute and the Due Process Clause—are collapsed into a single due process inquiry. *Pederson v. Frost*, 951 F.3d 977, 980 (8th Cir. 2020). To comport with due process, a non-resident defendant must

have sufficient contacts with the forum state such that exercising jurisdiction over him does not offend traditional notions of fair play and substantial justice. *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010).

The Eighth Circuit has set forth the following five-factor test to guide the due process inquiry:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

*Id.* (citation omitted). Of these, the first three are afforded greater weight. *Datalink Corp. v. Perkins Eastman Architects, P.C.*, 33 F. Supp. 3d 1068, 1073 (D. Minn. 2014).

There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). Specific jurisdiction, unlike general jurisdiction, may only be exercised where the suit arises out of or relates to the defendant's contacts with the forum. *Id.* at 1780; *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 912 (8th Cir. 2012) ("Specific personal jurisdiction, unlike general jurisdiction, requires a relationship between the forum, the cause of action, and the defendant."). The plaintiffs invoke specific jurisdiction in this case.[2] For the reasons discussed below, the Court concludes that the plaintiffs have

---

[2] It is unclear whether plaintiffs also assert that this Court has general jurisdiction over the defendants, but in any event the record falls far short of establishing it. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (explaining that "[f]or an

established sufficient suit-related contacts between LikeZebra and Minnesota to satisfy the Eighth Circuit's due process inquiry. However, the plaintiffs have not met their burden with respect to Phillips and Rickard.

### A.     *The Defendants' Contacts with Minnesota*

*LikeZebra*. LikeZebra is a limited liability company organized under the laws of Nevada. (Am. Compl. ¶ 36; Phillips Decl. ¶ 5.) It maintains its principal place of business in California. (Am. Compl. ¶ 37; Phillips Decl. ¶ 5.) LikeZebra has not done business with anyone in Minnesota other than Halla. (Phillips Decl. ¶ 4; Rickard Decl. ¶ 4.)

In 2011, LikeZebra entered into one loan agreement with Halla and another with Halla's ROTH IRA. (Loan Agreements at 1.) LikeZebra discussed the terms of the Loan Agreements with an investment broker, Franco Porporino, Jr., rather than with Halla. (Phillips Decl. ¶ 6.) Porporino communicated with LikeZebra from California, New Jersey, and New York. (Phillips Decl. ¶ 11.) He initially indicated to LikeZebra that he might be able to secure funding for LikeZebra from many investors, but by early 2011 explained that Halla would be the only investor he could find. (*Id.*) Porporino told LikeZebra that he had total control over Halla's money. (*Id.*)

Each Loan Agreement provides a Minnesota address for the lender. (Loan Agreements at 1.) The Loan Agreements also state that any notice LikeZebra must give

---

individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile"). There is no basis for the exercise of general jurisdiction over the defendants.

7

to the lender under the terms of the Loan Agreement shall be mailed to Halla's address in Minnesota. (*Id.* § 8.4.) Finally, the Loan Agreements contain a choice-of-law provision stating that the rights and obligations of the parties under the Loan Agreements "SHALL BE GOVERNED BY AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH THE LAWS OF THE STATE OF MINNESOTA AND APPLICABLE FEDERAL LAW." (*Id.* § 8.8.)

In connection with its obligations under the Loan Agreements, LikeZebra made payments by check or by wire to Halla's account at a Minnesota bank. (Phillips Decl. ¶ 18; *see also* Phillips Decl., Ex. 1 at 2.) Halla once e-mailed LikeZebra directly to follow up on payments that he considered to be late and for an incorrect amount. (Phillips Decl., Ex. 1 at 2–3.) Otherwise, Porporino, and not Halla, would call, text, or e-mail LikeZebra when such issues arose. (Phillips Decl. ¶¶ 14, 19.) Sometimes, Halla would be copied on Porporino's e-mail correspondence with LikeZebra. (Phillips Decl., Ex. 1.)

*Phillips*. Phillips resides in California. (Am. Compl. ¶ 10; Phillips Decl. ¶ 2.) He is a member of LikeZebra and, among other things, its Chief Executive Officer. (Am. Compl. ¶¶ 15–18.) Phillips has never traveled to Minnesota and he cannot recall conducting business with anyone in Minnesota other than Halla. (Phillips Decl. ¶¶ 2–3.). He signed the Loan Agreements on LikeZebra's behalf. (Loan Agreements at 9.) After the parties executed the Loan Agreements, he had a brief phone call with Halla in August 2011.

(Phillips Decl. ¶ 13.) He once received an e-mail from Halla, but otherwise can only recall communicating about LikeZebra's payments with Porporino. (*Id.* ¶¶ 11–14.)

*Rickard*. Rickard resides in California. (Am. Compl. ¶ 20; Rickard Decl. ¶ 2.) He is a member, officer, and director of LikeZebra. (Am. Compl. ¶¶ 24–26.) Rickard has never traveled to Minnesota and he cannot recall conducting business with anyone in Minnesota other than Halla. (Rickard Decl. ¶¶ 2–3, 5.) The only time he recalls speaking with Halla is in mid-2018, when Porporino called Halla during a meeting and insisted that Rickard speak with him. (*Id.* ¶ 6.)

B.     *Company Defendant: LikeZebra*

LikeZebra contends that the five-factor test that Eighth Circuit courts use to guide the due process inquiry weighs against the exercise of specific jurisdiction over it. The Court disagrees. True, Phillips submitted a signed declaration attesting that LikeZebra did not originally know that the funds Porporino intended to secure for LikeZebra would come from a Minnesota resident. (*See* Phillips Decl. ¶¶ 6–12.) But the Loan Agreements make plain that LikeZebra contracted to obtain the $300,000 it sought from a Minnesota resident and his ROTH IRA. Among other things, LikeZebra agreed to a Minnesota choice-of-law provision in the Loan Agreements and agreed to mail any required notice to Halla in Minnesota. Finally, to the extent LikeZebra performed its obligations under the Loan Agreements, it did so by making payments by check or by wire to Halla's account at a Minnesota bank.

9

Under these facts, LikeZebra's performance under these agreements occurred in Minnesota. LikeZebra chose to enter into loan agreements (governed by Minnesota law) according to which it would borrow funds from a Minnesota resident and, as a foreseeable consequence of that choice, regularly made interest payments under those agreements to that Minnesota resident's account at a Minnesota bank. Although LikeZebra does not have many contacts with Minnesota, its contacts with the forum are strongly related to the loan agreements that are at the heart of this action. In these circumstances, the first three factors—(1) the nature and quality of the contacts with the forum state, (2) the quantity of the contacts with the forum state, and (3) the relation of the cause of action to the contacts—weigh strongly in favor of exercising specific jurisdiction over LikeZebra. *See, e.g., BPI Dev. Grp., L.C. v. Grange*, 181 F. Supp. 3d 604, 611–13 (S.D. Iowa 2016) (finding personal jurisdiction over the defendant and the first three factors satisfied where non-resident defendants entered into a loan agreement with residents and made one interest payment to those residents in the forum); *Marquette Bus. Credit, Inc. v. Int'l Wood, Inc.*, No. CIV 08-CV-1383 (JNE/FLN), 2009 WL 825800, at *7 (D. Minn. Mar. 27, 2009) (finding first three factors satisfied with respect to non-resident borrower, thus establishing specific personal jurisdiction over the non-resident defendant).

The final two factors, which are less important, do not weigh against exercising specific jurisdiction over LikeZebra. As to the fourth factor, Minnesota has an interest in

10

providing a forum for its residents, and this factor therefore weighs in favor of jurisdiction. *See LOL Fin. Co. v. Roberts*, No. 09-CV-01587 (MJD/SRN), 2010 WL 11646576, at *6 (D. Minn. Mar. 23, 2010). As to the fifth factor, although defendants claim that Minnesota is an inconvenient forum because many relevant witnesses will be found outside of Minnesota, "[w]here witnesses are in both Minnesota and a foreign state, however, the convenience of the parties favors neither side." *Id.* The Court concludes that the Eighth Circuit's five-factor test weighs in favor of exercising specific jurisdiction over LikeZebra.

The defendants contend that the Eighth Circuit's decision in *Fastpath, Inc. v. Arbela Technologies Corp.*, 760 F.3d 816 (8th Cir. 2014), and this Court's decision in *Fredin Brothers v. Anderson*, No. 19-CV-1679 (NEB/HB), 2019 WL 7037674 (D. Minn. Dec. 20, 2019), compel the opposite conclusion. In several key respects, those decisions considered different circumstances from the ones presented here. The Eighth Circuit in *Fastpath* considered a breach-of-contract action brought in Iowa by an Iowa corporation against a California corporation. 760 F.3d at 819–20. The contract at issue was a mutual confidentiality agreement with a covenant not to compete that "did not require performance or contemplate future consequences specifically in Iowa." *Id.* at 819, 822. The Eighth Circuit explained that exercising specific jurisdiction over the California corporation would not comport with due process because, among other things, the agreement did not contemplate performance in Iowa, there was in fact no performance in Iowa, and the

11

alleged breach also occurred outside of Iowa. *Id.* at 824–25. Here, by contrast, performance occurred in Minnesota. And unlike the California corporation in *Fastpath*, on this record, LikeZebra purposefully availed itself of the privilege of conducting activities in Minnesota—that is, borrowing money from a Minnesota resident and making interest payments in connection with its obligation to repay the borrowed money to an account at a Minnesota bank.

This Court in *Fredin Brothers* considered a breach-of-contract action brought against Texas and South Dakota residents. 2019 WL 7037674, at *1. The contracts at issue were invoices for the delivery of cattle, which were sourced from South Carolina or Texas, to locations in Texas. *Id.* at *1, *3. The *Fredin Brothers* defendants never contemplated performance in Minnesota. As the Court has stated, the same is not true here. LikeZebra's cases do not compel the conclusion it urges.

### C.  *Individual Defendants: Phillips and Rickard*

Phillips and Rickard also argue against the exercise of specific jurisdiction over them. This Court agrees. The record reveals insufficient suit-related contacts to establish specific jurisdiction over Phillips and Rickard. With respect to Phillips, he recalls once calling Halla in August 2011 after the Loan Agreements were executed and once receiving an e-mail from Halla in mid-2012. (Phillips Decl. ¶¶ 13–14; Phillips Decl., Ex. 1.) With respect to Rickard, Rickard spoke to Halla once in mid-2018, when Porporino called Halla during a meeting and insisted that Rickard speak with him. (Rickard Decl. ¶ 6.) These

few instances of communicating with Halla in Minnesota, which took place after the Loan Agreements were executed and appear to be at best loosely related to the claims asserted in the Amended Complaint, are not of the nature and quality that support the exercise of specific jurisdiction over Phillips or Rickard. *See, e.g.*, *Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.*, 89 F.3d 519, 523 (8th Cir. 1996) ("Although letters and faxes may be used to support the exercise of personal jurisdiction, they do not themselves establish jurisdiction."). The Court concludes that the first three factors decisively weigh against exercising specific jurisdiction over Phillips and Rickard.[3]

The plaintiffs argue that all of the defendants, including Phillips and Rickard, consented to jurisdiction in this District by way of section 8.8 of the Loan Agreements. But neither Phillips nor Rickard is a party to the Loan Agreements, so section 8.8 provides no basis to exercise specific jurisdiction over either of them.

### III.    Statute of Limitations

The defendants also contend that the claims are time-barred.[4] When it appears from the pleadings that the limitations period has run, dismissal under Rule 12(b)(6) is

---

[3] "Given [the] conclusion that the defendants do not have sufficient minimum contacts with Minnesota, the last two factors—the forum state's interest and the convenience of the parties—cannot themselves create personal jurisdiction." *Pederson v. Frost*, 951 F.3d 977, 981 n.4 (8th Cir. 2020).

[4] The parties have presented other matters outside the pleadings in connection with the defendants' motion. The Court excludes the matters outside the pleadings in its consideration of the defendants' Rule 12(b)(6) motion. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and

proper. *See Varner v. Peterson Farms*, 371 F.3d 1011, 1016, 1020 (8th Cir. 2004) (affirming Rule 12(b)(6) dismissal of claims that were not timely asserted). Having concluded that it lacks personal jurisdiction over Phillips and Rickard, the Court considers whether the defendants have met their burden to show that the claims asserted against LikeZebra, the only remaining defendant, should be dismissed under Rule 12(b)(6) because they are time-barred.

### A.     *Counts One and Two: Breach of Contract*

Under Minnesota law, which undisputedly applies, there is a six-year statute of limitations for breach-of-contract claims. *See* Minn. Stat. Ann. § 541.05, subd. 1. The defendants raise two arguments to challenge the timeliness of the breach-of-contract claims: (1) that the plaintiffs invoked their right to accelerate the debts LikeZebra owed under the Loan Agreements and therefore the plaintiffs' breach-of-contract claims accrued outside of the relevant six-year window and, (2) in the alternative, even if the plaintiffs did not accelerate, the statute of limitations ran on payments due outside the relevant six-year window.

In support of their first argument, the defendants rely on matters outside the pleadings that they claim show that the plaintiffs invoked their right to accelerate the debts in 2012, more than six years before they brought suit in August 2019. As a result,

---

not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

they argue, the plaintiffs' breach-of-contract claims must be dismissed as untimely. The Court excludes matters outside the pleadings from its consideration of the defendants' Rule 12(b)(6) motion. And the defendants have not met their burden to show that, on the face of the pleadings, the plaintiffs accelerated the debts owed to them outside the relevant six-year window.

In support of their second argument, the defendants point to the language of the Loan Agreements, arguing that the Loan Agreements contemplate payment in installments. Under governing Minnesota law, plaintiffs cannot now recover on payments due outside the relevant six-year window. They do not dispute that, if the plaintiffs did not accelerate payment, then the statute of limitations has not run on the payment due August 30, 2013. The Court agrees. As the Minnesota Supreme Court explained in *Honn v National Computer Systems, Inc.*, "[w]here a money obligation is payable in installments, the general rule is that a separate cause of action arises on each installment and the statute of limitations begins to run against each installment when it becomes due." 311 N.W.2d 1, 2 (Minn. 1981). This rule applies even when the agreement contains a final "balloon payment" provision. *Honn*, 311 N.W.2d at 3; *Windschitl v. Windschitl*, 579 N.W.2d 499, 502 (Minn. Ct. App. 1998). Applying the rule set forth in *Honn*, the statute of limitations ran on payments due outside the relevant six-year window (but not on the payment due August 30, 2013). As in *Honn*, the "balloon payment" provision in Section 2.3(c) does not save the payments due before the relevant

six-year window from Minn. Stat. Ann. § 541.05, subd. 1. The plaintiffs' various attempts to distinguish *Honn* are unavailing. The Court concludes that the defendants have met their burden to show that the statute of limitations ran on payments due under the Loan Agreements outside the relevant six-year window.

### B.     *Count Three: Fraudulent Inducement*

The defendants also argue that the plaintiffs' fraudulent inducement claim (Count three) is time-barred. A six-year statute of limitations applies. *See, e.g.*, *Abarca v. Little*, 54 F. Supp. 3d 1064, 1070 (D. Minn. 2014) (citing Minn. Stat. § 541.05(6) for proposition that six-year limitations period applies to fraudulent inducement claims). Again relying on matters outside the pleadings, the defendants contend that plaintiffs knew or should have known of the fraud by 2012 and therefore their fraudulent inducement claim accrued outside the relevant six-year window.

True, the statute of limitations on a fraudulent inducement claim begins to run when the party knew or should have known of the alleged fraud. *See Progressive Techs., Inc. v. Shupe*, No. A04-1110, 2005 WL 832059, at *6 (Minn. Ct. App. Apr. 12, 2005) (affirming order dismissing fraudulent inducement to contract claim as time-barred). But, as noted above, the Court excludes matters outside the pleadings from its consideration of the defendants' Rule 12(b)(6) motion. And, as courts have repeatedly held, when the plaintiff knew or should have known of the alleged fraud is a fact-intensive inquiry. *See, e.g., Barry v. Barry*, 78 F.3d 375, 380 (8th Cir. 1996) ("The question of when discovery [of

16

the fraud] could or should have reasonably been made is one of fact"); *In re Petters Co.*, 495 B.R. 887, 903 (Bankr. D. Minn. 2013), as amended (Aug. 30, 2013) ("For the Minnesota law of limitations and fraud actions, the discovery of fraud and the reasonable prospect of such discovery are questions of fact." (collecting cases)). Thus, even if the materials the defendants cite in their briefing as to what plaintiffs knew or should have known were somehow "necessarily embraced by the pleadings"[5] these materials do not, as a matter of law, show that the plaintiffs' fraudulent inducement claim accrued outside the relevant six-year window. The Court concludes that the defendants have not met their burden to show that, on the face of the pleadings, the plaintiffs' fraudulent inducement claim is time-barred.[6]

## C. *Count Four: Corporate Veil-Piercing*

Finally, the defendants argue that because the plaintiffs' breach-of-contract and fraudulent inducement claims should be dismissed as untimely under Rule 12(b)(6), the veil-piercing claim should also be dismissed. Assuming without deciding that this is a correct statement of law, the Court denies the motion to dismiss because not all of the claims asserted in the Amended Complaint are dismissed as time-barred.

---

[5] In the Court's view they are not.

[6] The Court disregards any arguments raised by the defendants for the first time on reply. A district court need not entertain arguments that were not raised in a movant's initial papers and that the non-movant has had no opportunity to address. *See, e.g.*, *Swanda v. Choi*, No. 10-CV-970 (MJD/JSM), 2012 WL 3839334, at *3 n.9 (D. Minn. Aug. 3, 2012), report and recommendation adopted, No. 10-CV-970 (MJD/JSM), 2012 WL 3839245 (D. Minn. Sept. 4, 2012) (declining to address arguments raised for the first time in reply).

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, the defendants' motion to dismiss (ECF No. 22) is GRANTED IN PART AND DENIED IN PART.

1. The claims asserted against defendants Phillips and Rickard in the Amended Complaint are DISMISSED;

2. Counts 1 & 2 of the Amended Complaint are DISMISSED IN PART consistent with this opinion; and

3. The defendant's motion to dismiss is otherwise DENIED.

Dated: September 14, 2020                    BY THE COURT:

                                             s/Nancy E. Brasel
                                             Nancy E. Brasel
                                             United States District Judge